UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| ROBERT BEAN, JACQULEEN AXLEY, CARL S. BIVENS, MALCHIAH D. BIVENS, JAMES T. BRYANT, RAYMOND, DAVID CLINE, JIMMY R. CLINE, ROBERT W. COUCH, GARY FREEMAN, CHARLES GIBSON, JOEL HOLLINGSHEAD, JOE MCNABB, MICHAEL D. MILLSAPS RALPH MOSER, FLOYD SHAFFER, SAMEUL O. SMITH, JR., WILLIAM M. STEWARD, III and DONNY WATTENBARGER<br><br>    Plaintiffs,<br>v.<br><br>STEVE TEAGUE, individually and in his Official capacity as MONROE COUNTY ROAD SUPERINTENDENT, and MONROE COUNTY, TENNESSEE<br><br>    Defendants. | No. 3:10-cv-440<br>(Phillips) |

MEMORANDUM AND ORDER

**I.  Introduction**

This matter comes before the Court concerning the Defendants' Motion for Summary Judgment [Doc. 41] and the Plaintiffs' Motion for Leave to file a Sur Reply. [Doc. 56]. For the reasons that will follow, the Plaintiffs' Motion for Leave to file a Sur Reply [Doc. 56] is **DENIED AS MOOT**, the Defendants' Motion for Summary Judgment [Doc. 41] is **DENIED** and the Defendants Motion for an Extension of time to file a Reply to the Response in Opposition to the Statement of Material Facts [Doc. 51] is **DENIED.**

-1-

**II. Statement of the Facts**

For the purposes of the present Motion, the following facts are taken from the Plaintiffs' Response in Opposition to the Defendants' Motion for Summary Judgment [Doc. 48], and all disputed facts are construed in the Plaintiffs' favor.

This lawsuit concerns Defendants' September 1, 2010 decision not to rehire 18 employees of the Monroe County, Tennessee Highway Department (the "Road Department" or "Department").

Until September 1, 2010, each of the 18 Plaintiffs worked for the Monroe County Road Department. Combined, Plaintiffs had worked for the Department for more than 78 years. Individually, each Plaintiff had worked for the Department for the length of time set forth below:

| | |
|---|---|
| Jacquleen Axley | Approximately 5.5 years |
| Robert Bean | Approximately 7 years |
| Carl S. Bivens | Approximately 6 years |
| James T. Bryant | At least approximately 2 months |
| Raymond David Cline | Approximately 7.5 years |
| Jimmy R. Cline | Approximately 2 years |
| Robert W. Couch | At least approximately 5.5 years |
| Gary Freeman | Approximately 3 years |
| Charles Gibson | Approximately 4 years and 7 months |
| Joel Hollingshead | Approximately 5.5 years |
| Joe McNabb | Approximately 1 year |
| Michael D. Millsaps | Approximately 4 years |
| Ralph Moser | Approximately 5 months |
| Floyd Shaffer | Approximately 6 years |
| Samuel O. Smith, Jr. | Approximately 8 years |
| William M. Stewart, III | Approximately 2 years |
| Donny Wattenbarger | Approximately 5 years |

Plaintiffs were not employed by Monroe County in policymaking positions. Rather, they were employed as manual laborers. During the summer of 2010, Defendant Steve Teague ran for

Road Superintendent as the Republican challenger to incumbent Democrat Phillip Axley. In the weeks leading up to the August 5, 2010 election, Plaintiffs actively supported Axley's campaign for reelection.

Plaintiffs supported Axley in various different ways, including, without limitation: displaying Axley campaign signs in their front yards; distributing Axley campaign signs to supporters; displaying Axley campaign bumper stickers on their vehicles; distributing Axley campaign literature; attending Democratic rallies; attending county events as Axley supporters; speaking with family, friends and acquaintances about Axley; distributing refreshments to Axley poll workers; traveling from polling site to polling site offering to work the polls while Axley volunteers took breaks; working the polls on election day for Axley; and voting for Axley. While working the polls on election day, many of the Plaintiffs saw and spoke with the Defendant Teague.

Teague defeated Axley on August 5, 2010 by a margin of approximately 2,000 votes, Axley's term as Road Superintendent ended on August 31, 2010. During the weeks between the August 5 election and Teague's first day as Road Superintendent, Teague posted a notice at the Road Department stating that any Road Department employee who hoped to continue working at the Department during his term in office should submit an application. Ten Plaintiffs submitted an application to Teague, and Teague interviewed two of them. Teague did not extend offers of employment to any of the Plaintiffs.

Although the remaining eight Plaintiffs did not submit applications, they all wanted to continue working for the Road Department under Teague. Plaintiffs David Cline and Charles Gibson did not submit applications because they did not believe they were required to do so to

continue working for the Road Department. Plaintiff Jimmy Cline did not submit an application because he believed it was only a rumor that Teague would terminate his employment. Plaintiffs Joseph McNabb and Michael Millsaps did not submit applications before September 1, 2010 because Teague had not yet assumed office, although they attempted to submit applications on September 1, 2010. Plaintiffs Jacquleen Axley, Ralph Moser, and William Stewart, III did not submit applications because they were told Teague would not employ them.

On Axley's last day in office, August 31, 2010, Axley gave each Plaintiff a separation notice, which he explained they could use to apply for unemployment benefits if Teague did not employ them in the Road Department. Axley did not intend to fire Plaintiffs by giving them separation notices. Rather, Axley did not know whether Teague would be employing all of the current Road Department employees, and he hoped to expedite the unemployment benefits process for those who lost their jobs. On the morning of Teague's first day in office, September 1, 2010, all but four of the Plaintiffs went to the Road Department prepared to work. Teague met the Plaintiffs in the parking lot of the Road Department, told them he did not have any work for them, and asked them to leave the premises. Teague also chose on that day not to extend offers of employment to the remaining four plaintiffs, despite his knowledge that they all sought and desired continued employment with the Road Department.

Also on September 1, 2010, Teague hired 10 new employees, and by the following Monday Teague had hired 2 additional new employees. In total, Teague hired 12 new employees by September 7, 2010. Among those employees were individuals who actively supported Teague in his campaign by speaking to family and friends and by distributing campaign literature,

individuals who voted for Teague, individuals who had worked for Teague's father, Ralph Teague, when he had been Road Superintendent, and other longtime friends and associates of the Teague family.

On September 1, 2010, Teague also rehired approximately 14 Road Department employees, the majority of whom had worked for Teague's father, Ralph Teague, when he had been Road Superintendent.25

By his own admission, Teague had no firsthand knowledge of the financial condition of the Road Department prior to September 1, 2010. On Teague's first day in office, the Road Department budget had a positive balance of $803,838.29. Later that month, the County Commission approved a 2.00% raise for all Monroe County employees. Moreover, according to Phillip Axley, who had been Road Superintendent for 8 years, the Road Department budget for the following year had been approved before Teague took office, and there was no budget reason to terminate Plaintiffs' employment.

As Road Superintendent, Teague is the primary decision maker over employment in the Road Department.

### III.   Summary Judgment Analysis

####    1.   The Standard

Summary judgment is proper where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "The moving party bears the initial burden of production." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "After the moving party has met its burden, the burden shifts to the nonmoving party, who must present some 'specific facts showing that there is a genuine issue for trial.'" *Jakubowski v. Christ*

*Hosp., Inc.*, 627 F.3d 195, 200 (6th Cir. 2010 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

In evaluating a motion for summary judgment, the court must construe all reasonable inferences in favor of the nonmoving party. *Hamilton v. Starcom Mediavest Grp., Inc.*, 522 F.3d 623, 627 (6th Cir. 2008) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson*, 477 U.S. at 251-52. "[I]f the nonmoving party fails to make a sufficient showing on an essential element of the case with respect to which the nonmovant has the burden, the moving party is entitled to summary judgment as a matter of law." *Palmer v. Cacioppo*, 429 Fed. App'x 491, 495 (6th Cir. 2011) (quoting *Thompson v. Ashe*, 250 F.3d 399, 405 (6th Cir. 2001)).

Here, as the Defendants filed the Motion for Summary Judgment, the Court will construe all reasonable factual inferences in favor of the Plaintiffs; furthermore, the Defendants will need to prove that there are no genuine issues of material fact and that the Defendants are entitled to judgment as a matter of law. *Id.*

**2. Summary Of The Issues**

The Plaintiff charges three counts: 1) Mr. Teague violated the Plaintiff's First Amendment Rights by retaliating against the Plaintiff's because of their political endorsement of an opposition candidate, in violation of 42 U.S.C. § 1983; 2) that Monroe County, Tennessee violated the Plaintiff's First Amendment Rights, in violation of 42 U.S.C. § 1983; and, 3) that the Defendants violated the Plaintiffs' equal protection rights to property under the Fourteenth

Amendment by denying employment to the Plaintiffs because of their political endorsement of an opposition candidate, in violation of 42 U.S.C. § 1983. [Doc.81 at ¶42-48].

The Sixth Circuit has held that there are three elements to a retaliation claim under §1983: (1) the plaintiff was engaged in a constitutionally protected activity; (2) the defendant's adverse action caused the plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and (3) the adverse action was motivated at least in part as a response to the exercise of the plaintiff's constitutional rights. In addition, the Supreme Court has held that the constitutionally-protected speech of government employees must touch upon a matter of public concern. *See, Pickering v. Board of Education*, 391 U.S. 563, (1968)(writing on balancing the interests of government employees, as citizens, "in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees."); *See also, Connick v. Myers*, 461 U.S. 138, 147 (1983) (holding that the First amendment protects from retaliation government employees who speak on matters of public concern.); *See also, Jenkins v. Rock Hill Local Sch. Dist.*, 513 F.3d 580, 587, (6th Cir. Ohio 2008)*(*finding that "Beyond those limited extensions, applying 'the public concern test outside the public employment setting would require us to rend it from its animating rationale and original context.'") (internal citations omitted). Here, there is no dispute that the Plaintiffs were speaking on matters of public concern.

**3. A Material Fact Exists**

The most simple and obvious material dispute is the reason why Mr. Teague either fired or refused to rehire[1] the Plaintiffs. The Defendants' state of mind is a fact is for the jury, not the Court, to resolve.

### 4. Qualified Immunity

The Defendants argument that they are entitled to qualified immunity is without merit. The present suit alleges a bad faith constitutional deprivation, which, if taken to be true, pierces any qualified immunity defense. Qualified immunity, also known as "good faith" immunity, does not extend to those who knowingly, or in bad faith, violate the constitutional rights of another. *See, Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982)(writing that qualified immunity is designed to shield government officials from actions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known"); *see also, Gantz v. Wayne County Sheriff's Office*, (writing that "Qualified immunity shields government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" 2013 U.S. App. LEXIS 2331 (6th Cir. Ky. 2013)(citing *Harlow*, 457 U.S. 818 (6th Cir1982)).

### 5. Municipality As A Party

The Defendants argue that the Plaintiffs cannot sue Monroe County since the Plainitffs cannot show that Monroe County instituted a policy or custom that resulted in an injury to the

---

[1] The Sixth Circuit has held that a government's failure to rehire, like a government's decision to fire, constitutes an adverse action for the purposes of a § 1983 action. *Faughender v. City of North Olmsted*, 927 F.2d 909, 912 (6th Cir.1991) (reversing a district court's granting of summary judgment, the circuit court held that "a failure to rehire is treated no differently than a firing under [Supreme Court Precedent].")

-8-

Plaintiffs. The Defendants write in the Memorandum in Support of the Motion for Summary Judgment that,

> A local government is liable as an entity only when the government itself has committed a constitutional violation, not when the violation was committed by one of its employees….none of Teague's alleged decisions/non-decisions on individual Plaintiffs…could be deemed the result or traced to any act or omission of Monroe County, Tennessee…In other words, Plaintiffs cannot show that any decision Mr. Teague made or did not make during August 2010 was a direct result of a policy or custom of Monroe County, Tennessee.

[Doc. 42 at 9-11].

A municipality or other local government may be liable under § 1983 if the governmental body itself "subjects" a person to a deprivation of rights or "causes" a person "to be subjected" to such deprivation. *See Monell* v. *New York City Dept. of Social Servs.*, 436 U.S. 658, 692, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). But, under § 1983, local governments are responsible only for "their *own* illegal acts." *Pembaur* v. *Cincinnati*, 475 U.S. 469, 479, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986) (citing *Monell*, 436 U.S., at 665-683, 98 S. Ct. 2018, 56 L. Ed. 2d 611). They are not vicariously liable under § 1983 for their employees' actions. *See id.*, at 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611; *Canton*, 489 U.S., at 392, 109 S. Ct. 1197, 103 L. Ed. 2d 412; *Board of Comm'rs of Bryan Cty.* v. *Brown*, 520 U.S. 397, 403, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997) (collecting cases).

Plaintiffs who seek to impose liability on local governments under § 1983 must prove that "action pursuant to official municipal policy" caused their injury. *Monell*, 436 U.S., at 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611; see *Id.*, at 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611. Official municipal policy includes the decisions of a government's lawmakers, the acts of its

policymaking officials, and practices so persistent and widespread as to practically have the force of law. *Connick v. Thompson,* 131 S. Ct. 1350, 1359 (U.S. 2011) (citing *Pembaur*, *supra*, at 480-481, 106 S. Ct. 1292, 89 L. Ed. 2d 452); *Adickes* v. *S. H. Kress & Co.*, 398 U.S. 144, 167-168, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970). These are "action[s] for which the municipality is actually responsible." *Pembaur*, *supra*, at 479-480, 106 S. Ct. 1292, 89 L. Ed. 2d 452.

Here, the Plaintiffs allege that,

> Teague has final authority to make personnel decisions for the Road Department. Specifically, Defendants have conceded that 'Mr. Teague is the primary decision maker over employment in the Monroe County Road Department.' Accordingly, given his role as [policymaker] Teague acts on behalf of Monroe County and is legally capable of binding Monroe County when he make unconstitutional hiring and firing decisions, as he did for Plaintiffs.

[Doc. 48 at 21]. As cited above, official municipal policy includes the decisions of government lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law. The Plaintiffs allege that Mr. Teague used the power of his office, including policymaking, budget setting, and his powers to employ and terminate employment to wage a political war against the Plaintiffs. Whether there is truth the Plaintiffs' claim is a matter to be decided by a jury.

## VII. Conclusion

For the reasons stated herein, Defendants' Motion for Summary Judgment [Doc. 41] is **DENIED**, the Plaintiffs' Motion for Leave to file a Sur Reply [Doc. 56] is **DENIED AS MOOT,** and the Defendants Motion for an Extension of time to file a Reply to the Response in Opposition to the Statement of Material Facts [Doc. 51] is **DENIED.**

**IT IS SO ORDERED.**

**ENTER:**

s/ Thomas W. Phillips
United States District Judge

-11-

Case 3:10-cv-00440  Document 65  Filed 04/03/13  Page 11 of 11  PageID #: 761